habitual criminal charge, the presentence investigation report reveals more than two dozen misdemeanors. We also find it pertinent that this is not his first conviction for escape.

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

AFFIRMED.

———————————

State of Nebraska, appellee, v.
Richard K. Cook, appellant.
___ N.W.2d ___

Filed March 20, 2015.    No. S-13-271.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from post-conviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Constitutional Law.** The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights.

3. **Postconviction: Constitutional Law: Judgments: Proof.** An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable.

4. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** When a court denies relief without an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.

5. **Trial: Due Process: Police Officers and Sheriffs: Witnesses.** A due process violation occurs when a law enforcement officer who participated in the investigation or preparation of the prosecution's case fabricates evidence or gives false testimony against the defendant at trial on an issue material to guilt or innocence.

6. **Postconviction.** An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law.

7. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

Appeal from the District Court for Douglas County: J RUSSELL DERR, Judge. Affirmed.

Jerry L. Soucie for appellant.

Jon Bruning, Attorney General, and Erin E. Tangeman for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, STEPHAN, McCORMACK, MILLER-LERMAN, and CASSEL, JJ.

HEAVICAN, C.J.

## NATURE OF CASE

Richard K. Cook was convicted of first degree murder and use of a firearm to commit a felony. Cook's conviction was affirmed. Cook now seeks postconviction relief. He appeals the district court's rejection of 28 of his 35 claims for postconviction relief. We conclude that the district court did not err when it denied an evidentiary hearing on the grounds that investigators fabricated evidence used at Cook's trial and that he received ineffective assistance of counsel from his appellate counsel's failure to raise certain issues related to his trial counsel's performance on direct appeal.

## BACKGROUND

This case is an interlocutory appeal from the district court's order denying some of Cook's claims for postconviction relief of his convictions for first degree murder and use of a weapon to commit a felony. A full recitation of the facts can be found in *State v. Cook*.[1] Below is a summary of the relevant facts related to this appeal.

*Amy Stahlecker's Death.*

On April 29, 2000, Amy Stahlecker's body was found on the banks of the Elkhorn River near the intersection of Highway 275 and West Maple Road in Douglas County, Nebraska. Witnesses last saw Stahlecker alive around 1 a.m. on April 29, when she left Omaha to drive back to Fremont, Nebraska. The

---

[1] *State v. Cook*, 266 Neb. 465, 667 N.W.2d 201 (2003).

white Ford Explorer Stahlecker was driving was found with a blown tire on the side of Highway 275.

Stahlecker's body was found underneath a bridge that was a part of West Maple Road. Stahlecker had been shot multiple times, including once to the back of the head and twice to the face. An autopsy revealed multiple contusions and abrasions on Stahlecker's body. The autopsy also found semen in the vaginal area, but no specific evidence of sexual assault. DNA testing of the semen revealed that it was consistent with Cook's DNA.

On May 2, 2000, Michael Hornbacher, a friend of Cook, contacted a Washington County deputy sheriff and told him that Cook had confessed to Hornbacher that Cook killed Stahlecker. Hornbacher also later gave statements to Nebraska State Patrol investigators. Hornbacher and Cook gave conflicting accounts as to what happened the night Stahlecker was killed and what happened the following day.

*Hornbacher's Version.*

Hornbacher testified at trial that Cook and Hornbacher were at a bar the night of Stahlecker's death. Hornbacher saw Cook leave in Cook's truck, and Hornbacher later got a ride home from three people he had met at the bar. Hornbacher's girlfriend, with whom he shared an apartment, testified that she waited up for Hornbacher and that he arrived home at 12:50 a.m. After Hornbacher arrived back at his apartment, he passed out in his bed and did not wake up until 11 or 11:30 a.m.

Believing he left personal items in Cook's truck, Hornbacher called Cook about picking up the items. Cook did not want Hornbacher to come to Cook's residence, so they arranged for Cook to pick up Hornbacher in front of Hornbacher's residence. After Hornbacher got in the truck, Cook said that he was concerned about something that might affect his family.

Cook then drove to a park and confessed to killing a woman the night before. Hornbacher testified that Cook told him that after Cook left the bar, Cook drove west on Highway 275 toward Fremont, where he saw a woman on the side of the road with a flat tire on her vehicle. Cook stated that he

picked the woman up and that they had sexual intercourse in the front seat of the truck. After the intercourse, Cook said the woman had "'weirded out'" and Cook feared the woman may claim that he raped her.[2] According to Hornbacher, Cook said he "ordered the woman to get out of the truck, and then he 'lost it' and grabbed his 9-mm handgun from the truck's console and 'unloaded' it on the woman."[3] Cook told Hornbacher that that he dumped the body in a ravine.

*Cook's Version.*

Cook testified at his own trial and presented a different version of events the night of Stahlecker's death. According to Cook, shortly after leaving the bar, Cook and Hornbacher decided to drive to a bar in Fremont that featured female strippers. While driving along Highway 275, Cook testified that they encountered Stahlecker and her vehicle on the side of the highway. Cook decided he would stop to help change the tire. Cook attempted to change the tire, but was unable to do so. Cook testified that he could not call for help because his cell phone was not working and they could not find Hornbacher's cell phone. Cook decided that they should find an open service station to get help. After finding no open service station, Stahlecker suggested they return to the Explorer. They were unable to find the vehicle and decided to pull over into an off-road area on West Maple Road and "'chill out.'"[4]

Cook testified that Hornbacher was either passed out or sleeping in the back seat of Cook's truck at this time. According to Cook, he and Stahlecker then had consensual sexual intercourse in the front passenger seat. After Cook and Stahlecker finished and began dressing, Hornbacher spoke up from the back seat. Cook stated that neither he nor Stahlecker were aware Hornbacher was awake in the back seat. Cook testified that Hornbacher forcefully demanded that Stahlecker perform oral sex on him and that she refused. An argument ensued, and Hornbacher reached to grab Stahlecker's shoulder. According

---

[2] *Id.* at 471, 667 N.W.2d at 209.

[3] *Id.*

[4] *Id.* at 472, 667 N.W.2d at 209.

to Cook, it was at this time that Stahlecker exited the truck and began to walk away. Cook then got out of the truck to give Stahlecker her keys or offer her a ride.

Cook testified that he heard two gunshots and then saw Hornbacher leaning out of the driver's-side window with Cook's gun in his hand. Hornbacher exited the vehicle and approached Stahlecker, and then Cook saw Hornbacher shoot Stahlecker in the back of the head. After Stahlecker collapsed, Hornbacher then shot Stahlecker in the face two times. Cook testified that he ran to Stahlecker's body to check for a pulse. Cook stated that he was forced at gunpoint by Hornbacher to help drag the body across the road and dump it off the bridge. Cook also testified that Hornbacher threatened to kill him if Cook said anything about the murder.

*Investigation and Forensic Evidence.*

At the scene of the crime, investigators found a blood smear on the bridge, with a trail of blood drops leading from the bridge, across the median, and to the eastbound lane of West Maple Road. DNA tests determined that the blood was consistent with Stahlecker's DNA. Investigators also made castings of a shoeprint located on the bridge and another shoeprint left in a pool of blood.

After Hornbacher's statements to law enforcement, investigators from the Nebraska State Patrol went to Cook's place of employment in Council Bluffs, Iowa, and told Cook that they needed to speak with him at their Omaha office. The Nebraska State Patrol transported Cook's truck to the Omaha office, then returned it to Council Bluffs and, after obtaining a search warrant, brought the truck back to the Nebraska State Patrol headquarters in Omaha. Investigators discovered traces of blood and fibers from Stahlecker's clothes on the inside of Cook's truck. DNA tests revealed that Stahlecker could not be excluded as the contributor of the blood. Investigators also determined that a bloody shoeprint found on the exterior door panel of Cook's truck matched the shoeprints found at the scene of the crime.

David Kofoed, the chief crime scene investigator for Douglas County at the time, assisted with the collection of

evidence in this case. In 2009, it was discovered that Kofoed had fabricated and planted evidence in at least two different murder investigations. In both cases, it was determined that Kofoed planted evidence to corroborate confessions made to police.[5]

In this case, Kofoed specifically assisted the Nebraska State Patrol by taking castings of the shoeprints found at the scene of Stahlecker's death. In addition, Kofoed, along with three other Douglas County crime scene investigators, initially processed the evidence from Cook's truck; Kofoed and another investigator were responsible for physically collecting evidence from the truck, while the other investigators were responsible for note-taking and documenting and photographing the evidence.

*Trial and Direct Appeal.*

On April 26, 2001, the jury found Cook guilty of first degree murder and use of a firearm to commit a felony. On July 20, the court sentenced Cook to life imprisonment on the first degree murder conviction and 49½ to 50 years' imprisonment on the weapons conviction.

Cook appealed his convictions. Cook alleged seven claims of trial court error and seven different claims of ineffective assistance of counsel by Cook's trial attorney. In case No. S-12-681, this court rejected all of Cook's claims of trial court error, determining that there was an insufficient record to decide each of Cook's ineffective assistance of counsel claims, and dismissed the appeal on September 13, 2012.

Cook filed his initial pro se motion to vacate his convictions on July 2, 2004. On April 11, 2005, Cook filed an amended pro se motion for postconviction relief. On September 4, 2009, Cook filed a second, and final, amended motion for postconviction relief. The majority of the second amended motion was drafted by Cook, despite Cook's having been appointed a lawyer. Cook raised four of the same claims of ineffective

---

[5] *State v. Kofoed*, 283 Neb. 767, 817 N.W.2d 225 (2012). See *State v. Edwards*, 284 Neb. 382, 821 N.W.2d 680 (2012).

assistance of counsel as he did on direct appeal, and 31 new claims for postconviction relief.

On June 27, 2012, the district court entered an order addressing all of Cook's claims. The district court granted a hearing on Cook's four claims of ineffective assistance of counsel that were raised on direct appeal, along with three new claims. The remaining claims were rejected by the district court on the grounds that the claims either clearly had no merit or did not allege facts with sufficient specificity regarding prejudice. Two of the rejected claims involve allegations that Kofoed fabricated evidence, and the rest of the claims allege that Cook received ineffective assistance of counsel due to his appellate counsel's failure to make certain arguments on appeal.

## ASSIGNMENTS OF ERROR

Cook assigns that the district court erred in (1) denying an evidentiary hearing and dismissing the motion for postconviction relief on the ground that Kofoed or other investigators planted evidence used at Cook's trial, in violation of the Due Process Clause of the 14th Amendment to the U.S. Constitution, and (2) denying an evidentiary hearing and dismissing the motion for postconviction relief on the grounds relating to the "layered" allegation of ineffectiveness of appellate counsel for failure to raise and argue issues on direct appeal involving conflict of interest, specific instances of ineffective assistance of trial counsel, and incorrect jury instructions, in violation of the 5th, 6th, and 14th Amendments to the U.S. Constitution.

## STANDARD OF REVIEW

[1] In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.[6]

---

[6] *State v. Baker*, 286 Neb. 524, 837 N.W.2d 91 (2013).

## ANALYSIS

[2,3] The Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014), is available to a defendant to show that his or her conviction was obtained in violation of his or her constitutional rights.[7] An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution, causing the judgment against the defendant to be void or voidable.[8]

[4] Cook assigns that the district court erred in denying an evidentiary hearing and dismissing his motion for postconviction relief on the grounds that an investigator fabricated evidence and that his counsel on direct appeal was ineffective for failing to raise certain issues on direct appeal. When a court denies relief without an evidentiary hearing, an appellate court must determine whether the petitioner has alleged facts that would support a claim of ineffective assistance of counsel and, if so, whether the files and records affirmatively show that he or she is entitled to no relief.[9]

*Fabricated Evidence Claims*.

[5] Cook seeks an evidentiary hearing to prove that Kofoed fabricated DNA evidence found in Cook's truck. If Kofoed did indeed fabricate evidence, that would constitute a violation of Cook's right to due process. A due process violation occurs when a law enforcement officer who participated in the investigation or preparation of the prosecution's case fabricates evidence or gives false testimony against the defendant at trial on an issue material to guilt or innocence.[10]

In his motion for postconviction relief, Cook makes allegations that Kofoed or unnamed Nebraska State Patrol investigators either cross-contaminated evidence from the crime

---

[7] *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009).

[8] *State v. Branch*, 286 Neb. 83, 834 N.W.2d 604 (2013).

[9] *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011).

[10] *Edwards, supra* note 5.

scene into the truck or actually planted evidence in the truck. Cook alleges that blood traces, later determined to match Stahlecker's DNA, and a fiber from Stahlecker's underwear were somehow placed in Cook's truck by the investigators. He also alleges in his motion, without any factual support, that Kofoed purchased a pair of shoes to create a bloody footprint in the truck that matched a footprint found at the scene of the crime.

[6] An evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law.[11] We agree with the district court that the claim of fabricated evidence is "only an allegation involving a conclusion without any supporting facts." As the district court also noted, all of the evidence found inside Cook's truck is easily explainable by Cook's own version of the events. Cook admitted that Stahlecker was inside his truck shortly before her death and that he had sexual intercourse with Stahlecker. This would explain the fiber from Stahlecker's underwear that was found in the truck. Cook also testified that he checked Stahlecker's pulse after she was shot and that he was forced to help move Stahlecker's body across the road and dump it over the bridge. This places Cook near the body and would explain the bloody footprint found on the outside of the truck, along with the traces of blood in the truck's interior.

In *State v. Edwards*,[12] a case involving a Kofoed investigation, we stated that the allegations "would be too conclusory if [the defendant] had simply alleged in a vacuum that a law enforcement officer fabricated evidence to be used against him at trial without any factual allegations upon which to base such a claim." But we determined in that case that the defendant's claims warranted an evidentiary hearing when the allegations made by the defendant were similar to Kofoed's unlawful conduct in two prior investigations:

> [The defendant] alleged that as in the 2006 investigation of the . . . murders, Kofoed found blood in an obscure part of [the defendant's] car after other [crime scene]

---

[11] *Branch, supra* note 8.

[12] *Edwards, supra* note 5, 284 Neb. at 404, 821 N.W.2d at 700.

investigators had examined the car and failed to find this evidence. The facts alleged in [the defendant's] petition also appear similar to the 2003 investigation in that Kofoed allegedly submitted swabs of evidence for DNA testing instead of submitting the evidence itself. And the allegations suggest that Kofoed may have held physical evidence for several days before having another investigator test it, a pattern that is similar to his conduct during the 2006 investigation in which he fabricated evidence.[13]

In this case, Kofoed and his team discovered all of the evidence during the initial search of the truck. The blood was found on the floormat of Cook's truck and also on the inside and outside door panels of the driver's-side door, all areas of the truck which could not be classified as "obscure." Additionally, Kofoed had no involvement with the investigation after he and his team completed the initial search of the vehicle. Simply alleging Kofoed's involvement in the investigation and his history of fabricating evidence is not sufficient on its own to support a claim for postconviction relief. Without more, there is no basis to conclude, based on the record in this case, that Kofoed or any other investigator placed this evidence in Cook's truck, through either cross-contamination or fabrication. The district court did not err in dismissing these claims. Cook's assignment of error is without merit.

*Layered Ineffective Assistance
of Counsel Claims.*

Cook assigns that the district court erred in failing to grant an evidentiary hearing for several of Cook's layered ineffective assistance of counsel claims. This appeal is limited solely to the question of whether Cook failed to allege sufficient facts to demonstrate a violation of his constitutional rights or whether the record affirmatively shows that he is entitled to no relief.[14]

---

[13] *Id.*

[14] See *Baker, supra* note 6.

[7] Although Cook makes several conclusory arguments in his statement of facts regarding the sufficiency of his allegations, he gives no explanation in the argument section of his brief for how the district court actually erred in rejecting his layered claims or how the claims were factually sufficient. Instead, Cook argues that this court should overturn the rule that precludes review of issues which were raised on direct appeal or were known to the defendant and could have been litigated on direct appeal.[15] An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[16] Because Cook failed to argue how the district court erred in rejecting his layered ineffective assistance of counsel claims for postconviction relief, we will not consider his assignment of error. Conversely, the argument Cook actually makes in his brief was not specifically assigned as an error on appeal, nor was it raised before the district court. We therefore decline to address it.

## CONCLUSION

We conclude that the district court did not err in denying Cook's request for a hearing for 28 of his 35 grounds for postconviction relief. We affirm the district court's order.

Affirmed.

---

[15] See, e.g., *State v. Lee*, 282 Neb. 652, 807 N.W.2d 96 (2011).

[16] *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).