Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
05/20/2016 11:06 AM CDT

State of Nebraska, appellee, v.
Vencil Leo Ash III, appellant.
___ N.W.2d ___

Filed May 20, 2016.    No. S-15-327.

1. **Criminal Law: Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

2. **Rules of Evidence.** In proceedings where the Nebraska Evidence rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

3. **Motions for New Trial: Appeal and Error.** A trial court's order denying a motion for new trial is reviewed for an abuse of discretion.

4. **Effectiveness of Counsel: Postconviction: Records: Appeal and Error.** An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.

5. **Effectiveness of Counsel: Appeal and Error.** Whether a claim of ineffective assistance of trial counsel raised on direct appeal may be determined on direct appeal is a question of law.

6. ____: ____. In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively

determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance?

7. **Criminal Law: Motions for Mistrial.** A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.

8. **Motions for Mistrial.** Events that may require the granting of a mistrial include egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters.

9. **Motions for Mistrial: Appeal and Error.** Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.

10. **Appeal and Error.** An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.

11. **Evidence.** Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

12. **Verdicts: Juries: Appeal and Error.** In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial court was surely unattributable to the error.

13. **Motions for Mistrial: Motions to Strike: Appeal and Error.** Generally, error cannot be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.

14. **Effectiveness of Counsel: Proof.** To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.

15. **Effectiveness of Counsel: Proof: Presumptions: Appeal and Error.** The two prongs of the ineffective assistance of counsel test under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.

16. **Effectiveness of Counsel: Appeal and Error.** When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.

17. **Rules of Evidence: Hearsay: Words and Phrases.** Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.

18. **Effectiveness of Counsel: Proof: Appeal and Error.** When making an ineffective assistance of counsel claim on direct appeal, allegations of prejudice are not required. However, a defendant must make specific allegations of the conduct that he or she claims constitutes deficient performance.

19. **Effectiveness of Counsel.** A general allegation that counsel failed to object, without any kind of assertion as to what grounds supported any objection, is insufficient to preserve a claim that trial counsel performed deficiently.

Appeal from the District Court for Kimball County: Derek C. Weimer, Judge. Affirmed.

Leonard G. Tabor for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Stacy, J.

## I. INTRODUCTION

This is the second time Vencil Leo Ash III has been before us challenging his conviction for first degree murder. In 2012, Ash was convicted of the first degree murder of Ryan Guitron and was sentenced to life in prison. On direct appeal, we reversed, and remanded for a new trial. We found the trial court erred in denying Ash's request for a continuance after the State disclosed, on the brink of trial, that a codefendant would be testifying pursuant to a plea agreement.[1]

---

[1] *State v. Ash*, 286 Neb. 681, 838 N.W.2d 273 (2013).

Ash was retried in 2015, and again was found guilty of first degree murder and sentenced to life in prison. He timely filed this direct appeal and was appointed different counsel to represent him on appeal. We affirm his conviction and sentence.

## II. BACKGROUND

On November 4, 2003, Guitron was reported missing by his girlfriend. Guitron's remains were discovered nearly 7 years later, on April 8, 2010, under a woodpile on an abandoned farm in rural Kimball County, Nebraska. The cause of death was determined to be two gunshot wounds, one through his right eye and the other through the back of his neck. The bullet recovered from Guitron's skull was fired from a .380-caliber pistol purchased by Ash's sister. Guitron's death was found to have occurred on October 15, 2003.

In August 2003, Ash and his 15-year old girlfriend, Kelly Meehan (whom Ash later married), began living with Guitron in Fort Collins, Colorado. Guitron, Ash, and Meehan were methamphetamine users. After living together for several weeks, Ash and Meehan moved out of Guitron's trailer home and began living in a tent near Grover, Colorado. While living in the tent, Ash retrieved the .380-caliber pistol from his sister because Meehan wanted some form of protection. Ash was with his sister when she purchased the pistol on August 1, 2003, in Walsenburg, Colorado.

### 1. Meehan's Version of Events

Meehan testified that Ash threatened to kill Guitron after finding Meehan's bra and underwear in Guitron's backpack, along with a pornographic magazine. On the day of the murder, Ash asked Guitron to travel with Ash and Meehan to get methamphetamine. Ash drove them in Guitron's car to an abandoned farm. Ash, Guitron, and Meehan smoked methamphetamine during the drive, and again upon arriving at the abandoned farm.

According to Meehan, all three got out of Guitron's car and walked around the farm. They discovered parts of a baby bed,

and Ash instructed Meehan to collect the parts and take them back to the car. On her way back to the car, Meehan heard a gunshot. She looked back and saw Ash standing over Guitron's body, holding the .380-caliber pistol. Meehan testified this was the first time she had seen the pistol that day, because Ash normally tucked the pistol in his pants. Meehan stated she did not hear or see a struggle or see any other weapon during the incident. Ash then walked to the car, got a pair of black gloves, and told Meehan he was going to bury Guitron under a wood-pile near the farm. According to Meehan, after Ash covered up the body, they left to get gas and then drove Guitron's car back to Fort Collins. During the drive to Fort Collins, Ash told Meehan that Guitron had come after him with a knife, so Ash shot him.

## 2. Ash's Version of Events

Ash denied finding Meehan's bra and underwear in Guitron's backpack and claimed he and Guitron were good friends. Ash claimed that on the day of the murder, he, Guitron, and Meehan went in Guitron's car to get some iodine from Guitron's source so that Ash could "'cook'" more methamphetamine.[2] The three of them smoked methamphetamine during the drive. Ash missed a turn, and they ended up at an abandoned farm where some old cars caught his eye. Ash claimed he left his sister's .380-caliber pistol in a cooler in the back seat next to Meehan. According to Ash, they found a baby bed while walking the farm property. Ash went back to the car to retrieve tools so that Meehan could dismantle the baby bed, and at the same time, Guitron returned to the car and got a .22-caliber rifle. While Meehan dismantled the baby bed, Ash and Guitron continued to search the property.

During the search, Guitron wanted to smoke more meth-amphetamine, but discovered none was left. According to Ash, Guitron said that "'he was going to kill that . . . bitch,'"

---

[2] *Id.* at 684, 838 N.W.2d at 276.

referring to Meehan, and "'took off running'" with the rifle in hand.[3] Ash claimed he went after Guitron and saw Guitron fire a shot from the .22-caliber rifle at Meehan. Ash then knocked the rifle out of Guitron's hand, which caused another round to go off. The two men struggled, and then Ash saw Meehan and heard a shot. The men fell to the ground, and Ash heard another shot. Ash claimed he then saw Guitron lying on the ground and saw Meehan in the car, banging her head against the dashboard. Ash claimed he and Meehan then left in Guitron's car to get gas. They returned, however, to pick up the rifle and retrieve from Guitron's person the address for Guitron's iodine source.

After the murder, Ash traded Guitron's car for a Cadillac Escalade. Ash and Meehan then drove the Escalade to Guitron's home in Fort Collins and loaded some of Guitron's property into the Escalade.

### 3. INVESTIGATION

On October 18, 2003, 3 days after Guitron's death, Ash was arrested on a warrant for parole violations. The Escalade remained with Meehan after Ash's arrest. The following day, Meehan was arrested on a juvenile warrant, and the .380-caliber pistol was discovered under Meehan's bed at Ash's sister's house, where Meehan had been living. After Meehan's arrest, the Escalade was towed and several of Guitron's possessions were found inside, including his credit card and various personal items. Pieces of the baby bed gathered on the day of the murder were also found in the Escalade. Later, on November 24, law enforcement retrieved the .380-caliber pistol from Ash's sister. It was not disputed that this was the weapon used to shoot Guitron.

After Guitron's disappearance, Ash was questioned by law enforcement on several occasions. On November 4, 2003, Ash indicated he had last seen Guitron on October 17. Ash

---

[3] *Id.* at 684, 838 N.W.2d at 277.

claimed Guitron was supposed to pick him up to work at an oil rig the next day, but never showed up. On March 18, 2004, Ash was interviewed by the lead investigator into Guitron's disappearance. At that time, Ash claimed he had seen Guitron alive on October 18, 2003, at Guitron's home. Ash denied killing Guitron, but at the end of the interview, unsolicited, he asked whether they had found Guitron's body. Ash then stated that if Guitron was dead, law enforcement would have found his body because it had been quite some time since Guitron's disappearance.

On April 2, 2010, Meehan was interviewed by law enforcement on a different matter. During the interview, she volunteered that Ash had killed Guitron. Meehan was then escorted by the lead investigator to try to locate the abandoned farm, but she failed to do so. A few days later, on April 7, the lead investigator again interviewed Ash. During this interview, Ash initially denied shooting Guitron, but then admitted shooting Guitron twice to protect Meehan because Guitron was shooting at her. Ash then directed law enforcement to the abandoned farm, where Guitron's remains were later discovered.

Officers also located two .22-caliber rifle casings at the abandoned farm. One casing was found on top of the dirt, and the other on top of some cement; neither casing was rusted. Based on the locations of the two casings, law enforcement determined the casings could not have been ejected to their respective locations from where Guitron had been shot, as shown by physical evidence that still remained at the scene, or from where his remains were located.

Ash was charged with first degree murder in connection with Guitron's death. In a separate information, Meehan was charged with aiding and abetting the first degree murder of Guitron.[4] Meehan eventually reached a plea agreement with the State, and she testified as a central witness against

---

[4] *State v. Ash, supra* note 1.

Ash at both the first and the second jury trial. After the second jury trial, Ash was found guilty of first degree murder and sentenced to life in prison. He timely filed this direct appeal.

## III. ASSIGNMENTS OF ERROR

Ash presents four assignments of error on appeal: (1) There was insufficient evidence to support the jury verdict, (2) the trial court erred in various evidentiary rulings made during trial, (3) the trial court erred in overruling his motion for new trial, and (4) his trial counsel was ineffective.

## IV. STANDARD OF REVIEW

[1] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[5]

[2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.[6]

[3] A trial court's order denying a motion for new trial is reviewed for an abuse of discretion.[7]

---

[5] *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015); *State v. Esch*, 290 Neb. 88, 858 N.W.2d 219 (2015).

[6] *State v. Newman*, 290 Neb. 572, 861 N.W.2d 123 (2015); *State v. Stricklin*, 290 Neb. 542, 861 N.W.2d 367 (2015).

[7] *State v. Stricklin, supra* note 6; *State v. Draper*, 289 Neb. 777, 857 N.W.2d 334 (2015).

[4] An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[8]

[5,6] Whether a claim of ineffective assistance of trial counsel raised on direct appeal may be determined on direct appeal is a question of law.[9] In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only questions of law: Are the undisputed facts contained within the record sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance?[10]

## V. ANALYSIS

### 1. Sufficiency of Evidence

Ash argues the evidence was insufficient to convict him of first degree murder. His brief highlights several inconsistencies in the evidence—particularly in the testimony of Meehan. Ash suggests that because of these inconsistencies, the evidence presented lacked sufficient probative value. We disagree.

The evidence submitted at the second trial, including Meehan's testimony, was substantially similar to the evidence submitted at the first trial. In Ash's first direct appeal, we specifically analyzed whether the evidence presented was sufficient to convict Ash of first degree murder, and found

---

[8] See, *State v. Abdullah*, 289 Neb. 123, 853 N.W.2d 858 (2014); *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014).

[9] See *State v. Cullen*, 292 Neb. 30, 870 N.W.2d 784 (2015).

[10] *Id.*

it was.[11] Ash now argues that Meehan's testimony was not credible, but it is not this court's function to assess the credibility of witnesses when determining the sufficiency of the evidence.[12] Viewed in the light most favorable to the prosecution, the evidence presented at the second trial was sufficient for a rational jury to find beyond a reasonable doubt that Ash was guilty of first degree murder. This assignment of error is without merit.

## 2. Errors in Trial Court Rulings

Ash assigns broadly that there were "[e]rrors in the ruling of the trial court during the trial."[13] In his brief, Ash identifies six rulings relating to this assignment of error. We address each in turn.

### (a) State's Opening Statements and Motion for Mistrial

During opening statements, the prosecutor gave a detailed and lengthy summary of the procedural and substantive history of the case. As part of that summary, the prosecutor said detectives had a "big break" in April 2010 when Meehan was interviewed on an unrelated incident. The prosecutor explained that "during that interview," Meehan told investigators she had information about Guitron's disappearance. The prosecutor then went on to describe Meehan's general version of events and, in doing so, referred sometimes to Meehan's anticipated trial testimony using typical phrases like "she will tell you" and "she will testify" and other times referred instead to what Meehan "said." Ash did not object to the prosecutor's remarks during the State's opening statement. Instead, after both parties' opening statements were finished and the jurors were excused for the evening, Ash made a record of his

---

[11] *State v. Ash, supra* note 1.

[12] *State v. Dominguez, supra* note 5.

[13] Brief for appellant at 18.

objection that the prosecutor's opening statement referenced inadmissible hearsay, and moved for mistrial. In opposing the motion, the State conceded the prosecutor's remarks had been imprecise, but argued the point was to "get across the fact that this is [Meehan's] story and this is the story [the jury would] hear . . . when she comes up [to] testify." The court overruled the motion for mistrial.

[7-9] Ash contends the overruling of his motion for mistrial was error. A mistrial is properly granted in a criminal case where an event occurs during the course of a trial which is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[14] Events that may require the granting of a mistrial include egregiously prejudicial statements of counsel, the improper admission of prejudicial evidence, and the introduction to the jury of incompetent matters.[15] Whether to grant a motion for mistrial is within the trial court's discretion, and an appellate court will not disturb its ruling unless the court abused its discretion.[16]

Assuming without deciding that Ash's objection adequately preserved the issue for appellate review, we conclude the court did not abuse its discretion in overruling the motion for mistrial. Our review of the record demonstrates the prosecutor's description of Meehan's testimony was ambiguous in terms of tense, and the jury could easily have understood the prosecutor's remarks as foretelling Meehan's trial testimony, rather than referencing what she actually said to investigators in 2010. The prosecutor's occasional reference to "she said" rather than "she will testify" in the opening statement is not the type of egregious or prejudicial statement that requires a mistrial, particularly when the jury was specifically admonished

---

[14] *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013).

[15] *State v. Dixon*, 282 Neb. 274, 802 N.W.2d 866 (2011).

[16] *Id.*

that counsel's statements were not evidence. There is no merit to this assignment of error.

### (b) Guitron's Oakland Raiders
### Jacket and Television

At trial, the State presented evidence that Ash had pawned two items belonging to Guitron: an Oakland Raiders jacket and a television. The jacket was pawned 2 days before the murder and the television 2 days after. Ash objected to this evidence based on Neb. Rev. Stat. § 27-404 (Cum. Supp. 2014), arguing it was inadmissible character evidence. The court overruled his objections and admitted the evidence.

[10] Ash asserts in his brief that this evidence was erroneously admitted, but he presents no argument as to how or why the court erred, and we decline to speculate. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[17] This requirement is not designed to impede appellate review, but to facilitate it by preventing parties from shifting to appellate courts the critical tasks of searching the record for relevant facts, identifying possible error, and articulating a legal rationale that supports the assigned error. Because Ash presents no argument regarding the error he assigns to admission of this evidence, the issue is not properly presented for appellate review and we do not address it further.

### (c) Meehan's Testimony

In his brief, Ash asserts that Meehan testified she regretted telling investigators about Ash's role in Guitron's murder, because she married Ash in 2010. Ash also notes there was evidence he and Meehan had several conversations about her anticipated testimony. Other than generally referencing this evidence, Ash's brief cites no evidentiary ruling he claims was

---

[17] *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015); *State v. Filholm, supra* note 8.

erroneous and presents no argument that the admission of this evidence resulted in any type of error or prejudice. We are left to speculate as to both the source and the nature of any error, and we decline to do so.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court.[18] Because this error was assigned but not argued, we do not address it further.

### (d) Guitron's Background

During trial, an investigator was asked by the State whether Guitron was "wanted" for any criminal activity at the time of his disappearance. Ash objected to the question on relevance, but the objection was overruled. The investigator responded that Guitron did not have any outstanding warrants.

[11,12] On appeal, Ash contends his objection should have been sustained because whether Guitron had warrants at the time of his disappearance was not relevant evidence. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[19] Assuming that overruling the objection was error, we nevertheless conclude it was harmless. In a harmless error review, an appellate court looks at the evidence upon which the jury rested its verdict; the inquiry is not whether in a trial that occurred without the error a guilty verdict would surely have been rendered, but, rather, whether the guilty verdict rendered in the trial was surely unattributable to the error.[20] Here, the guilty verdict was surely unattributable to any error in admitting the evidence regarding Guitron's lack of warrants.

---

[18] *Id.*

[19] Neb. Rev. Stat. § 27-401 (Reissue 2008).

[20] *State v. Britt, ante* p. 381, ___ N.W.2d ___ (2016); *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016).

### (e) Premeditation Instruction

At the jury instruction conference, Ash asked that the jury be instructed using only the statutory definition of premeditation set forth in Neb. Rev. Stat. § 28-302(3) (Reissue 2008), which provides: "Premeditation shall mean a design formed to do something before it is done." In jury instruction No. 5, the district court instead gave a premeditation definition consistent with NJI2d Crim. 4.0: "Premeditated/Premeditation means to form the intent to do something before it is done. The time needed for premeditation may be so short as to be instantaneous provided that the intent to act is formed before the act and not simultaneously with the act."

Ash's brief contends this was error, but does not argue or explain why. Because the alleged error is not both assigned and argued, it is not preserved for our review.[21]

### (f) Hearsay During Investigator's Testimony

During the State's examination of an investigator, the following exchange took place:

> Q. Okay, do you recall what you told Investigator Maul at that time?
>
> A. Something to the effect that —
>
> [Defense counsel]: I'm going to object [on] hearsay.
>
> THE COURT: That's overruled. Go ahead.
>
> . . . .
>
> A. It was something to the effect that we had developed some information about a possible missing person that they were working and . . . Meehan had just told me that . . . Ash had killed . . . Guitron.
>
> [Defense counsel]: Object, move to strike.

The court then sustained defense counsel's objection, struck the investigator's response, and admonished the jury to disregard the investigator's statement about what Meehan had told

---

[21] See, *State v. Cook, supra* note 17; *State v. Filholm, supra* note 8.

him. Ash then moved for a mistrial, and the court overruled the motion. Ash now argues the court abused its discretion in overruling the motion for mistrial.

[13] Generally, error cannot be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.[22] Moreover, although the investigator's testimony was hearsay, its admission here was harmless. It was not important at trial that one investigator told another investigator what Meehan had reported, particularly since Meehan herself testified at trial that Ash killed Guitron. Under the circumstances, the court did not abuse its discretion in overruling the motion for mistrial, and this assignment of error has no merit.

## 3. Denial of Motion
### for New Trial

Ash argues the district court erred in overruling his motion for new trial, because the evidence was insufficient to show the murder occurred in Nebraska. But there was evidence presented at trial via Meehan, and Ash's own testimony from the first trial, that the murder occurred on a farm located in Kimball County. That evidence was sufficient to support the venue of the murder in Kimball County. There was no abuse of discretion in denying Ash's motion for new trial on this basis.

We note that in his brief, Ash also makes reference to testimony he gave at the hearing on his motion for new trial— testimony to the effect that his earlier statements and testimony regarding the location of the murder were involuntary. However, because Ash presents no argument with respect to these statements, and because no error was assigned regarding these statements, we do not address this issue on appeal.[23]

---

[22] *State v. Davis*, 290 Neb. 826, 862 N.W.2d 731 (2015).

[23] See, *State v. Cook, supra* note 17; *State v. Filholm, supra* note 8.

### 4. Ineffective Assistance
### of Trial Counsel

[14,15] To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*,[24] the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense.[25] The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable.[26]

[16] Ash is represented on direct appeal by different counsel than the counsel who represented him at trial. When a defendant's trial counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. Otherwise, the issue will be procedurally barred.[27] An ineffective assistance of counsel claim is raised on direct appeal when the claim alleges deficient performance with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to recognize whether the claim was brought before the appellate court.[28]

The fact that an ineffective assistance of counsel claim is raised on direct appeal does not necessarily mean that it can be resolved on direct appeal.[29] The determining factor is whether

---

[24] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[25] *State v. Ortega*, 290 Neb. 172, 859 N.W.2d 305 (2015); *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013).

[26] *State v. Cullen, supra* note 9.

[27] *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

[28] See, *State v. Abdullah, supra* note 8; *State v. Filholm, supra* note 8.

[29] *State v. Cullen, supra* note 9.

the record is sufficient to adequately review the question.[30] An ineffective assistance of counsel claim will not be resolved on direct appeal if it requires an evidentiary hearing.[31]

### (a) Stipulations

The parties stipulated that on December 13, 2003, law enforcement conducted a traffic stop of a car owned by Guitron. The driver told officers she received the car from her brother. The brother had received the car from Ash after trading the Escalade. The parties also stipulated that the .380-caliber pistol identified as the murder weapon was submitted for DNA testing, but that no usable DNA profile was discovered. Ash argues his trial counsel performed deficiently by entering into these stipulations, because it "made it easier for the [S]tate to try the case."[32]

Defense counsel does not perform in a deficient manner simply by failing to make the State's job more difficult. And Ash offers no other argument as to why his counsel's performance regarding these stipulations was deficient. Most notably, there is no argument that the State would have been unable to offer the evidence in the absence of the stipulations. This assignment of error is without merit.

### (b) Dr. Schilke's Testimony

Dr. Peter Schilke, a pathologist, performed an autopsy on Guitron's remains. He testified on direct that he sent the jawbone and teeth to a forensic dentist for a positive identification of the body. Schilke then testified that he was aware the forensic dentist was able to positively identify the remains as those of Guitron. Ash's counsel did not object to this testimony from Schilke. On appeal, Ash contends this was deficient performance because the testimony was hearsay.

---

[30] *Id.*

[31] *Id.*

[32] Brief for appellant at 40.

[17] Hearsay is a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted.[33] We need not analyze whether Schilke's testimony was hearsay, because even if it was, the record affirmatively shows Ash was not prejudiced by his attorney's failure to object. There was no dispute at trial that the skeletal remains were Guitron's, and at least one other expert testified the remains were identified as belonging to Guitron. The record here affirmatively shows the admission of Schilke's testimony did not amount to prejudicial error sufficient to support a claim for ineffective assistance of counsel.

### (c) Ash's Recorded Interview

During trial, portions of an April 7, 2010, recorded interview between Ash and law enforcement were played for the jury. Trial counsel did not object. On appeal, Ash contends the failure to object was deficient performance. He does not, however, explain why or on what grounds an objection should have been made.

[18,19] When making an ineffective assistance of counsel claim on direct appeal, allegations of prejudice are not required.[34] However, a defendant must make specific allegations of the conduct that he or she claims constitutes deficient performance.[35] Appellate counsel must present the claim with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) a district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court.[36] A general allegation that counsel failed to object, without any

---

[33] *State v. Stricklin, supra* note 6.

[34] *State v. Casares, supra* note 27.

[35] *State v. Filholm, supra* note 8.

[36] See, *State v. Abdullah, supra* note 8; *State v. Filholm, supra* note 8.

kind of assertion as to what grounds supported any objection, is insufficient to preserve a claim that trial counsel performed deficiently.[37]

Because he has not indicated any grounds which support an objection to this evidence, Ash has not raised this claim with sufficient particularity, and we therefore conclude it is not properly raised in this direct appeal.[38]

### (d) DNA Analysis

Ash argues in his brief that his trial counsel possessed a report showing female DNA was on the barrel of the murder weapon, and he claims counsel performed deficiently by failing to offer the DNA report at trial. We need not determine whether counsel was deficient in failing to offer the report, because even if he was, the record affirmatively shows Ash was not prejudiced by the failure to offer the report. Evidence at trial demonstrated that two females—Meehan and Ash's sister—came in contact with the gun after the murder but before the gun was recovered by police. Under the circumstances, the presence of female DNA evidence on the barrel of the gun was not exculpatory to Ash. This assignment of error is without merit.

### (e) Aquilla Rios' Statement

Ash argues his trial counsel had a statement from Aquilla Rios wherein Rios stated that Meehan told her she was in the car when the murder happened. Ash argues his trial counsel performed deficiently by failing to get the statement from Rios into evidence. Ash suggests Rios' statement would have affected Meehan's credibility, because Meehan testified at trial that she was walking to the car when she heard the gunshot. We conclude the record on direct appeal is insufficient to address this claim.

---

[37] See *State v. Filholm, supra* note 8.

[38] See, *State v. Abdullah, supra* note 8; *State v. Filholm, supra* note 8.

### (f) Investigation of Rios and
### Drug Psychosis Expert

In our prior opinion,[39] we concluded Ash was prejudiced when the district court denied his motion for a continuance, because he did not have an opportunity to investigate either Meehan's statements that she experienced drug-induced hallucinations or her prior statement to Rios about the murder. In his brief, Ash generally asserts that his trial counsel failed to investigate either of these matters after remand. He does not specifically state why trial counsel was deficient in not doing so, but implies that if we deemed it necessary to permit a continuance in order to allow counsel the opportunity to investigate these matters, it was important enough that counsel should have conducted further investigation.

We conclude the record is insufficient to review this claim on direct appeal.

### (g) Psychiatric Evaluation of Meehan

Ash claims his trial counsel possessed a psychiatric evaluation performed on Meehan when she was 16, but never offered or used the evaluation at trial. Ash makes no further allegation about what the contents of the evaluation were, how it could have been used, or what it might have been offered to prove. We conclude Ash has not alleged deficient performance with sufficient particularity, and therefore this claim is not properly raised in this appeal.[40]

### (h) Motion to Suppress

Ash argues his trial counsel was ineffective because he did not file a motion to suppress any of the State's evidence. Ash does not identify any specific evidence which should have been suppressed, nor does he specify any legal basis for filing such a motion. We conclude Ash has not alleged deficient

---

[39] *State v. Ash, supra* note 1.

[40] See, *State v. Abdullah, supra* note 8; *State v. Filholm, supra* note 8.

performance with sufficient particularity, and therefore this claim is not properly raised in this appeal.[41]

### (i) Attorney Visits and
### Letter From Meehan

Ash asserts that his trial counsel visited him only two or three times while he was incarcerated. Ash also asserts he gave his trial counsel a letter from Meehan in which she confessed to the murder, but his counsel made no use of that letter at trial.

We understand this assignment to allege trial counsel performed deficiently by not adequately preparing for trial and not presenting exculpatory evidence. We determine the record is insufficient to review this claim on direct appeal.

### (j) Ash's Former Trial Testimony

Ash's testimony from the first trial was offered into evidence at the second trial. His counsel objected to portions of the prior testimony, and those portions were redacted and not admitted at the second trial. Ash contends his trial counsel was ineffective for failing to object to the entirety of Ash's former trial testimony.

Ash does not, however, explain what was objectionable about the remainder of his prior testimony or allege why his counsel performed deficiently in failing to object to the prior testimony in its entirety. We conclude this claim has not been presented with sufficient particularity, and therefore it is not properly raised in this appeal.[42]

### (k) Venue of Murder

Ash argues his trial counsel never followed up on Ash's assertions that the crime was committed in Colorado, rather than Nebraska. We conclude the record affirmatively

---

[41] See *id*.

[42] See *id*.

disproves this allegation of ineffective assistance of counsel. Ash testified at his first trial that the crime occurred in Nebraska. After his second trial, during the hearing on his motion for new trial, Ash testified that after the guilty verdict was returned, he called his attorney and provided the attorney with information that the murder occurred in Colorado. The record affirmatively shows that Ash's counsel followed up on the information, and eventually filed a motion for new trial based on the information. This assignment of error is without merit.

### (l) Evidence at Hearing on Motion for New Trial

At the hearing on the motion for new trial, the State offered exhibits 138 to 143, which generally consisted of prior statements made by Ash concerning the location of Guitron's murder and revealing Ash's motivation for challenging the location of the murder after his conviction. Ash contends his trial counsel was ineffective in failing to object to his prior statements.

Ash does not indicate on what grounds counsel could have objected. We conclude deficient performance has not been alleged with sufficient particularity, and therefore this claim is not properly raised in this appeal.[43]

### (m) Witness Todd Rowell

Ash argues his trial counsel had information about a witness named "Todd Rowell" who "had some information which would have corroborated [Ash's] testimony."[44] He contends trial counsel was deficient in failing to further investigate Rowell or subpoena him.

Ash does not explain what information Rowell possessed or what part of Ash's testimony would have been corroborated

---

[43] See *id*.
[44] Brief for appellant at 44.

by Rowell. This allegation of deficient performance is not made with sufficient particularity, and therefore this claim is not properly raised in this appeal.[45]

### (n) Motion for Directed Verdict

Ash contends his trial counsel was deficient for failing to move for a directed verdict. He implies such a motion should have been made because the evidence was insufficient to convict. We disagree.

As already noted, there was sufficient evidence in the record to support the jury verdict. The record thus affirmatively shows counsel was not deficient in failing to move for a directed verdict, and this claim is without merit.

### VI. CONCLUSION

Ash's claim that there was insufficient evidence to support the verdict is without merit. None of Ash's claims of trial court error have merit. The motion for new trial was properly denied. Any claim of ineffective assistance of counsel is either affirmatively disproved by the record, not sufficiently presented for our review, or not able to be reviewed on the record before us. Accordingly, Ash's conviction and sentence are affirmed.

AFFIRMED.

---

[45] See, *State v. Abdullah, supra* note 8; *State v. Filholm, supra* note 8.