IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

COMMERCIAL CONTRACTORS EQUIP. V. LOWER PLATTE NORTH NRD

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

COMMERCIAL CONTRACTORS EQUIPMENT, INC., A NEBRASKA CORPORATION, APPELLEE,

v.

LOWER PLATTE NORTH NATURAL RESOURCES DISTRICT, A POLITICAL SUBDIVISION
OF THE STATE OF NEBRASKA, APPELLANT.

Filed May 26, 2015.    No. A-14-260.

Appeal from the District Court for Saunders County: MARY C. GILBRIDE, Judge. Affirmed.

Jovan W. Lausterer, of Bromm, Lindahl, Freeman-Caddy & Lausterer, for appellant.

David Geier for appellee.

IRWIN, RIEDMANN, and BISHOP, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Lower Platte North Natural Resources District (NRD), a political subdivision of the State of Nebraska, appeals an order of the district court for Saunders County, Nebraska, in this contract action concerning a contract between NRD and Commercial Contractors Equipment, Inc. (Commercial), a Nebraska Corporation. On appeal, NRD challenges the district court's determination that NRD was required to comply with a claims procedure set forth in its contract with Commercial, the court's determination that it did not comply with the claims procedure, and the court's determination that Commercial was entitled to payment under the contract. We find no merit to NRD's assertions regarding the claims and liquidated damages provisions in the contract, and we decline to address NRD's assertions regarding Commercial's completion of the work because NRD failed to argue that assertion in its brief. We affirm.

- 1 -

## II. BACKGROUND

This case arises out of a contract entered into between Commercial and NRD for the construction of a dam in Saunders County, Nebraska. Commercial was to construct the dam for NRD. The contract provided that Commercial would receive in excess of $12,500,000 for completion of the project.

The contract provided for substantial completion in July 2010 and final completion in August 2010. Testimony adduced at trial indicated that an inspection in June 2010 resulted in a list of items that needed to be completed to satisfy substantial completion, and Commercial's President testified that those items were all completed by the end of August 2010. Other testimony indicated that the work of construction of the dam was completed in December 2010. There was testimony adduced throughout trial about documents and paperwork that may or may not have been completed in support of Commercial's application for final payment under the contract.

The contract between Commercial and NRD included a liquidated damages provision, under which NRD had a right to liquidated damages in the amount of $1,000 per day.

In December 2011, Commercial filed a complaint seeking payment of $300,000 that NRD had not yet paid under the contract. Commercial alleged that it had completed the contracted work, that NRD had taken possession and control of the dam, and that NRD had refused to pay the $300,000 balance due under the contract. NRD filed an answer and a counterclaim, alleging its right to liquidated damages.

After a trial, the district court concluded that Commercial had completed all work required under the contract and was entitled to the $300,000 unpaid balance. The court concluded that NRD's claim for liquidated damages was subject to a contract provision requiring notice of claims under the contract to be filed with a project engineer (Engineer) and that NRD had failed to timely comply with the notice provision in the contract. As such, the court concluded that NRD was not entitled to enforcement of its right to liquidated damages. This appeal followed.

## III. ASSIGNMENTS OF ERROR

On appeal, NRD has assigned four errors, which we consolidate for discussion to three. First, NRD asserts that the district court erred in finding that the claims procedure set forth in the contract applied to NRD's claim for liquidated damages. Second, NRD asserts that the court erred in finding that NRD failed to comply with the claims procedure. Third, NRD asserts that the court erred in finding that Commercial had completed required services under the contract and is entitled to payment.

## IV. ANALYSIS

The issues presented for resolution in this case concern the interpretation and application of various provisions in the contract between the parties. While that contract is more than 350 pages in length, the issues on appeal primarily concern the meaning and application of a handful of provisions that the parties have agreed are the crux of the case. Those provisions are set forth as necessary below.

The meaning of a contract is a question of law, in connection with which an appellate court has an obligation to reach its conclusions independently of the determinations made by the court

below. *Kercher v. Bd. Of Regents of University of Nebraska*, 290 Neb. 428, 860 N.W.2d 398 (2015).

In interpreting a contract, a court must first determine, as a matter of law, whether the contract is ambiguous. *Gibbons Ranches, L.L.C. v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract is ambiguous when a word, phrase, or provision in the contract has, or is susceptible of, at least two reasonable but conflicting interpretations or meanings. *Gibbons Ranches, L.L.C. v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015).

When the terms of a contract are clear, a court may not resort to rules of construction, and the terms are to be accorded their plain and ordinary meaning as an ordinary or reasonable person would understand them. *Kercher v. Bd. Of Regents of University of Nebraska*, 290 Neb. 428, 860 N.W.2d 398 (2015); *Gibbons Ranches, L.L.C. v. Bailey*, 289 Neb. 949, 857 N.W.2d 808 (2015). A contract must receive a reasonable construction and must be construed as a whole, and if possible, effect must be given to every part of the contract. *Kercher v. Bd. Of Regents of University of Nebraska*, 290 Neb. 428, 860 N.W.2d 398 (2015).

## 1. APPLICATION OF CLAIMS PROCEDURE

First, NRD asserts that the district court erred in finding that the claims procedure set forth in its contract with Commercial applied to NRD's claim for liquidated damages. NRD argues that the plain language of the contract indicates that a claim for liquidated damages was not subject to the claims procedure set forth in the contract. We disagree.

In *Harmon Cable Communications of Nebraska Ltd. Partnership v. Scope Cable Television, Inc.*, 237 Neb. 871, 468 N.W.2d 350 (1991), the Nebraska Supreme Court discussed contractual conditions, their significance, and the difference between a condition and a promise. In that case, the Court noted that a contractual condition has been defined as an operative fact on which some particular legal relation depends and as an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due. *Id.* As a general rule, a condition must be exactly fulfilled before liability can arise on the contract. *Id.* Performance of a duty subject to a condition cannot become due unless the condition occurs or its non-occurrence is excused and unless it has been excused, the non-occurrence of a condition discharges the duty. *Id.* See, also, Restatement (Second) of Contracts § 225 at 165 (1981).

In *Harmon Cable Communications of Nebraska Ltd. Partnership v. Scope Cable Television, Inc., supra*, the Court was called upon to determine whether a purchaser was entitled to recover damages or whether the right to damages was foreclosed by the purchaser's failure to comply with notification provisions in an indemnification provision in a contract. The Court noted that if the notice requirements were deemed to be a condition to the sellers' liability, noncompliance with the notice requirements would discharge the sellers' liability for damages. Noting that it is often difficult to determine whether language is intended to create a condition or a promise, the Court noted that terms such as "if," "provided that," "when," "after," "as soon as," "subject to," "on condition that," or some similar phrase are evidence that performance of a contractual provision is a condition. *Id.*

In the present case, it is not difficult to determine that submitting a claim to the Engineer in compliance with Paragraph 10.05 of the contract was intended to create a condition to enforceability of a right under the contract because the parties did not use any language requiring

interpretation. The parties specified, in plain and unambiguous language, that written notice of a claim "shall" be delivered to the Engineer and the other party in no event later than 30 days after the start of the event giving rise to a claim and that a decision by the Engineer "shall be required as a condition precedent to any exercise by [either party] of any rights or remedies either may otherwise have under the Contract." The parties specifically used the language "condition precedent," leaving no doubt that the parties intended compliance with the claims procedure to be a condition to exercising rights or remedies under the contract.

The liquidated damages provision in this case is a provision that creates in NRD a right to the remedy of liquidated damages for Commercial's failure to achieve the completion deadlines in the contract. The liquidated damages provision is clearly a provision setting forth a right and a remedy under the contract. NRD's desire to enforce that right and receive that remedy, to receive those liquidated damages for Commercial's failure to complete work by the substantial completion deadline or the final deadline, was a desire to exercise the right created by the liquidated damages provision. The plain and unambiguous language of the contract specified that exercising rights and remedies under the contract required compliance with the claims procedure as a condition precedent to relief.

NRD argues on appeal that it was not required to comply with the claims procedure to secure liquidated damages because Paragraph 14.07(3)(C) in the contract provided that "[t]hirty days after the presentation to [NRD] of the Application for Payment and accompanying documentation, the amount recommended by Engineer, less any sum [NRD] is entitled to set-off against Engineer's recommendation, including but not limited to liquidated damages will become due and will be paid by [NRD] to [Commercial]." Brief for Appellant at 8. That provision, however, does not excuse compliance with the claim provision of the contract. Rather, the plain language of the provisions, when read together, indicates that NRD has a right to file a claim seeking liquidated damages and that the final amount due to Commercial under the contract would be the contract amount approved by the Engineer less amounts by which NRD might be entitled to reduce the approved amount as a result of a valid claim, including liquidated damages.

But the right to reduce the amount due by liquidated damages still required compliance with the claims procedure set forth in the contract. Paragraph 1.01 in the contract set forth defined terms and their respective meanings for purposes of this contract. That paragraph specifically defined the term "Claim" to mean "[a] demand or assertion by [either party] seeking an adjustment of Contract Price or Contract Times, or both, or other relief with respect to the terms of the Contract. That paragraph also specifically defined "Contract Price" to mean "[t]he moneys payable by [NRD] to [Commercial] for completion of the Work in accordance with the Contract documents." A plain reading of these provisions in the contract makes it clear that NRD's demand or assertion that the amount it owed to Commercial should be adjusted in accordance with the terms of the liquidated damages provision of the contract was a claim.

Paragraph 10.05, the claims provision in the contract, specifically provided that "All claims, *except those waived pursuant to Paragraph 14.09*, shall be referred to the Engineer for decision." Paragraph 14.09 in the contract deals with the parties' waiver of claims as a result of the making and acceptance of final payment. The language in Paragraph 10.05 demonstrates the parties' ability and intent to except from the claims procedure claims that the parties wished to

waive. There was no similar provision included to except from the mandatory claims provision a claim for liquidated damages.

As a result, we find no error in the district court's determination that NRD's request for liquidated damages was a right or remedy under the contract and that the claims provision applied to the claim for liquidated damages.

## 2. SATISFACTION OF CLAIMS PROCEDURE

Next, NRD asserts that the district court erred in finding that the claims procedure set forth in its contract with Commercial was not complied with. NRD argues that the plain language of the contract indicates that the time for filing its claim for liquidated damages should not have begun until an application for final payment was submitted. We disagree.

The claims provision in the contract in this case provides that "[w]ritten notice stating the general nature of each Claim, shall be delivered by the claimant to Engineer and the other party to the Contract promptly (but in no event later than 30 days) after the start of the event giving rise thereto."

In *First Nat. Bank of Omaha v. Acceptance Ins. Companies, Inc.*, 12 Neb. App. 353, 675 N.W.2d 689 (2004), this court was called to determine whether a party to a contract lost its right to present a claim by failing to comply with a provision in the contract requiring notice of claims prior to a particular date. We concluded that the language used in the contract indicated that the parties intended notice of claims to be a condition to the right to seek relief for such claims, and we held that failure to comply with the notice provision resulted in the party losing its right to advance the claim.

In this case, the plain language of the contract required NRD to deliver written notice of its claim for liquidated damages no later than 30 days after the start of the event giving rise thereto. The right to liquidated damages was based on Commercial's failure to meet substantial completion and final completion deadlines, so the start of the event giving rise to a claim for liquidated damages was the passing of those deadlines without the work being completed. In other words, the 30 day clock for NRD to file written notice of its claims for liquidated damages began to run as soon as Commercial failed to meet those deadlines.

There is no dispute presented in the evidence, the briefing, or the arguments in this case that NRD did not file written notice of its claims for liquidated damages within 30 days of Commercial's failure to meet the deadlines. The substantial completion deadline was in July 2010 and the final completion deadline was in August 2010, and there is no dispute that NRD did not file written notice of its claims for liquidated damages with the Engineer until June 2011, several months past the 30 day deadline.

Rather, NRD argues that if the claim for liquidated damages was subject to the claims provision, as we have concluded that it was, the clock should not begin to run until a final payment application was approved by the Engineer and presented to NRD for consideration. NRD argues that it would be illogical to require it to submit a claim for liquidated damages within 30 days of the completion deadline being missed because the work might still be ongoing at that time and NRD would be unable to determine the amount of its claim.

We disagree. Paragraph 10.05 plainly and unambiguously requires written notice of the claim within 30 days of "the start of the event giving rise thereto." The event giving rise to NRD's

claim for liquidated damages, as discussed above, was Commercial's failure to meet the deadlines set forth in the contract. The "start of [that] event" was the missing of the deadline, not a later completion of the work and application for final payment.

Paragraph 10.05 also requires the party filing notice of a claim to provide notice of the amount or extent of the claim and supporting data within 60 days after the start of the event "unless Engineer allows additional time for claimant to submit additional or more accurate data in support of such Claim." The plain and unambiguous language of Paragraph 10.05 would allow the Engineer to excuse NRD submitting the amount or extent of its claim for liquidated damages and supporting data if the work was not actually completed within 60 days of the deadlines. NRD's argument that it is illogical to conclude that "the start of the event" giving rise to its claim means the start of the period of time after Commercial missed the deadline has no merit.

As a result, we find no error in the district court's determination that NRD's request for liquidated damages was not filed in compliance with the claims provision.

### 3. COMPLETION OF WORK

Finally, NRD assigns as error that the district court erred in finding that Commercial completed all services required under the terms of the contract and is entitled to payment. NRD has not, however, presented any argument in its brief concerning this assigned error and, accordingly, we decline to further address it.

An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Cook*, 290 Neb. 381, 860 N.W.2d 408 (2015); *Gray v. Kenney*, 22 Neb. App. 739, 860 N.W.2d 214 (2015); *In re Guardianship of Forster*, 22 Neb. App. 478, 856 N.W.2d 134 (2014). When an assigned error is not argued in the argument section of the brief, the appellate court may decline to address it. See *State v. Cook, supra*; *In re Guardianship of Forster, supra*.

### V. CONCLUSION

We find no merit to NRD's assertions concerning the claims and liquidated damages provisions in the contract. We decline to address NRD's assignment of error concerning Commercial's completion of the work because NRD did not argue that assignment of error in its brief. We affirm.

AFFIRMED.