IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. BEDOLLA

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

LUIS BEDOLLA, APPELLANT.

Filed March 13, 2018.    No. A-17-353.

Appeal from the District Court for Hall County: TERESA K. LUTHER, Judge. Affirmed.

Gerard A. Piccolo, Hall County Public Defender, for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## I. INTRODUCTION

Following a trial, a jury found Luis Bedolla guilty of seven counts of sexual assault on a child, third degree. The jury found Bedolla not guilty of sexual assault on a child, first degree. Bedolla is represented by different counsel on appeal than his counsel at trial. Bedolla only assigns as error issues relating to ineffective assistance of counsel. For the reasons set forth below, we find these assignments are without merit. Therefore, we affirm.

## II. BACKGROUND

Bedolla was initially charged by information on August 4, 2015, with two counts of sexual assault on a child, third degree. On October 7, 2016, Bedolla was charged by amended information with seven counts of sexual assault on a child, third degree, and one count of sexual assault on a child, first degree. The allegations involved three victims, T.Z., born in 1993; J.Z., born in 1997; and K.Z., born in 2008. The State also sought to consolidate a separate case involving a fourth

victim, C.Z., born in 1999, with the present action. The district court held a hearing on the matter and refused to consolidate the cases. However, after a § 27-414 hearing, the district court issued an order allowing evidence from all four victims to be admitted at trial. The four victims in this case are sisters, and are the nieces of Bedolla. At the time of trial, T.Z. was 23 years old, J.Z. was 19 years old, C.Z. was 17 years old, and K.Z. was 8 years old. As Bedolla's assignments of error involve only issues pertaining to ineffective assistance of counsel, we will only discuss the testimony related to his assigned errors.

At the time of the alleged crimes, Bedolla lived with his wife and four sons in Grand Island, Nebraska. The family lived approximately ten blocks away from Bedolla's sister-in-law, her husband, and their four daughters. The two families were very close. The families could be found at each other's residences multiple times per week and celebrated graduations and birthdays together.

The first report of an alleged sexual assault against one of the four sisters occurred on May 25, 2015. C.Z. was staying at a friend's home without permission from her parents. C.Z. had been involved in an argument with her parents and was resistant to returning to her home. C.Z. informed her friend and her friend's guardian that she had been sexually abused by Bedolla over a span of 12 years. C.Z. testified that she decided to come forward with the report based on an incident that occurred on May 17, 2015. That day the families held a graduation party for C.Z.'s sister at C.Z.'s home. Most of the family was located outside of the residence. C.Z. chose to remain indoors, but was going outside to get food for herself. She encountered Bedolla in the kitchen area and testified that as they were passing each other, he grabbed her breasts. C.Z. said that she pushed him away and told him to stop, but he walked away and pretended like it did not occur.

She testified that this type of behavior had occurred multiple times since she was 4 years old. The incidents C.Z. testified about all occurred while she was alone with Bedolla. She stated that when she was as young as four, Bedolla would pretend to tickle her and then he would touch her vagina either over or under her underwear. C.Z. did allege that he digitally penetrated her at least one time.

At the urging of her friend's guardian, they called the police. C.Z. was taken to the Child Advocacy Center that evening. She reported inappropriate physical discipline by her parents. Near the end of the interview, C.Z. disclosed to the forensic interviewer that she had been sexually assaulted by Bedolla. C.Z. testified that she could only remember a few specific instances at the time of the interview. After the interview, Officer Crouch of the Grand Island Police Department drove C.Z. back to her parent's residence.

At the residence, Officer Crouch told C.Z. to disclose to her parents what she had reported. C.Z. told her parents that Bedolla had sexually abused her. Officer Crouch requested that they bring J.Z. outside. C.Z. testified that J.Z. looked scared and started crying immediately. C.Z. testified that J.Z. stated "I'm not doing this right now," and walked back inside. C.Z. stated that the officer left after J.Z. walked back into the residence.

C.Z. testified that her Aunt Lupe, Bedolla's wife, came to their residence a few hours later. C.Z. testified that Lupe was "all over the place" and was in anger and disbelief. When asked if she had ever told anyone about Bedolla sexually abusing her before May 25, 2015, C.Z. stated that she did one time. She and J.Z. were both under the age of 10 and were watching a scary movie and she asked J.Z. if Bedolla was a child molester. J.Z. told C.Z. not to talk about it. C.Z. admitted on

cross-examination that she did not previously remember telling her friend, F.G., about Bedolla sexually abusing her, but that she did communicate that to F.G. over a messaging application a couple of years prior to her report to the Child Advocacy Center. C.Z. testified that in her message to F.G., she told him that Bedolla's actions had ruined her childhood.

Officer Crouch testified similarly to the events of May 25, 2015. He testified that when C.Z. told her parents about the abuse, C.Z.'s mother, Estela, seemed shocked. He testified that when J.Z. came outside that she stated that she did not want to talk about it and went back inside of the residence. After leaving C.Z.'s residence, Officer Crouch went to Bedolla's home. Crouch requested that Bedolla come speak with him at the police station. Bedolla agreed and arrived at the police station to do an interview at approximately 12:30 a.m. on May 26, 2015. Officer Crouch requested that a Spanish-speaking officer attend the interview to interpret Bedolla's statement. Officer Tim Champion acted as interpreter for the interview. Bedolla generally denied the allegations of sexual abuse. After the interview concluded, Crouch informed Bedolla that he could return home and that the investigation was ongoing. Officer Crouch testified that he believed Officer Champion provided an accurate translation of Bedolla's statement.

F.G. testified that he had communicated with C.Z. on January 21, 2014, through a messaging application. In that conversation, F.G. stated that C.Z. had told him something personal, in confidence. F.G. told C.Z. that she should tell an adult about the issue. F.G testified that he did not discuss this conversation with anyone because he did not believe it was his business to discuss. The messages were not entered into evidence.

T.Z. was the eldest daughter to Carlos and Estela. She was 23 years old at the time of trial. T.Z. did not report that she was sexually assaulted by Bedolla until June 10, 2015. She testified that the first time she remembered being abused by Bedolla occurred when she was 6 years old. She was in the basement of Bedolla's home and Bedolla would pretend to tickle her and reach underneath her underwear and touch her vagina. T.Z. stated that this happened numerous times throughout the years. Additionally, T.Z. testified that when she was 8 years old, she went to the store with Bedolla in his van. Before they reached the store, Bedolla stopped the van and told T.Z. to get in the backseat. Bedolla went to the backseat as well and masturbated in her presence. T.Z. testified that he did not say anything, and afterwards, they drove to the store.

T.Z. testified about the night Officer Crouch brought C.Z. to the residence after her interview with the Child Advocacy Center. She stated that she stayed inside while her parents and J.Z. went outside to speak with Officer Crouch. She testified that when her mother returned from being outside with the officer that she was crying. T.Z. also testified that when her Aunt Lupe came and spoke to her mother, that her mother accused Bedolla of touching her child.

J.Z. testified to a similar pattern of sexual abuse. She was approximately 5 years old and sitting in the basement alone with Bedolla. There was no one else present in the basement. Bedolla began to touch her upper thigh and then move his hand slowly up to her vaginal area. His hand initially was over her underwear, but then moved under her underwear. This type of touching would occur frequently as she got older. The touching of her vaginal area ended when she was about 10 years old, but Bedolla then began to fondle her breasts and buttocks until she was around 15 years old. K.Z. also testified at trial. She testified that while alone with Bedolla, he had touched her vaginal area two different times. She testified that he penetrated her on both occasions with his fingers.

At the conclusion of trial, the jury returned a verdict finding Bedolla guilty of seven counts of sexual assault on a child, third degree, and not guilty on one count of sexual assault on a child, first degree. On March 1, 2017, Bedolla was sentenced to a combined sentence of not less than 12 years nor more than 15 years of imprisonment on the 7 guilty counts for which he was convicted. Bedolla appeals here.

## III. ASSIGMENTS OF ERROR

Restated, reordered, and consolidated, Bedolla assigns that his trial counsel was ineffective by: (1) failing to preserve the issue of the § 27-414 evidence regarding C.Z.'s testimony; (2) failing to object to C.Z.'s testimony involving foundation and hearsay evidence; (3) failing to object on hearsay grounds and allowing police officers to verify the accuracy of Officer Champion's interpretation of Bedolla's statement to police; (4) allowing Officer Crouch to testify to certain events the night of C.Z.'s report of the sexual assaults; (5) failing to object to the entirety of the testimony of F.G.; (6) failing to object to T.Z.'s testimony regarding the alleged van masturbation incident; (7) failing to object to T.Z.'s testimony involving foundation and hearsay evidence; (8) failing to object to Estela Z.'s testimony on the basis of lack of foundation and hearsay ; (9) failing to object to Carlos Z.'s testimony on the basis of lack of foundation and hearsay ; and (10) allowing Jose B. to be impeached by an improper question. Additionally, Bedolla argues in his brief that his trial counsel was ineffective by failing to object to both Investigator Mann and the forensic interviewer's opinion as to whether children report sexual assaults immediately.

## IV. STANDARD OF REVIEW

Whether a claim of ineffective assistance of trial counsel may be determined on direct appeal is a question of law. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017). In reviewing claims of ineffective assistance of counsel on direct appeal, an appellate court decides only whether the undisputed facts contained within the record are sufficient to conclusively determine whether counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance. *Id.*

## V. ANALYSIS

Bedolla argues that his trial counsel's performance was ineffective because counsel failed to make proper evidentiary objections. Additionally, Bedolla argues trial counsel failed to adequately preserve certain issues on appeal.

To prevail on a claim of ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the defendant must show that counsel's performance was deficient and that this deficient performance actually prejudiced his or her defense. *State v. Ash*, 293 Neb. 583, 878 N.W.2d 569 (2016). The two prongs of this test may be addressed in either order, and the entire ineffectiveness analysis should be viewed with a strong presumption that counsel's actions were reasonable. *Id.* The prejudice prong of the ineffective assistance of counsel test requires that the defendant show a reasonable probability that but for counsel's deficient performance, the result of the proceeding in question would have been different. *State v. Williams*, 295 Neb. 575, 889 N.W.2d 99 (2017). Bedolla is represented on direct appeal by different counsel than the counsel who represented him at trial. When a defendant's trial

counsel is different from his or her counsel on direct appeal, the defendant must raise on direct appeal any issue of trial counsel's ineffective performance which is known to the defendant or is apparent from the record. *State v. Ash, supra*. Otherwise, the issue will be procedurally barred. *Id.* An ineffective assistance of counsel claim is raised on direct appeal when allegations of deficient performance are made with enough particularity for (1) an appellate court to make a determination of whether the claim can be decided upon the trial record and (2) the district court later reviewing a petition for postconviction relief to be able to recognize whether the claim was brought before the appellate court. *Id.*

A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. Casares*, 291 Neb. 150, 864 N.W.2d 667 (2015).

> The determining factor is whether the record is sufficient to adequately review the question. When the claim is raised in a direct appeal, the appellant is not required to allege prejudice; however, an appellant must make specific allegations of the conduct that he or she claims constitutes deficient performance by trial counsel. Generally allegations that trial counsel performed deficiently or that trial counsel was ineffective are insufficient to raise an ineffective assistance claim on direct appeal and thereby preserve the issue for later review.

*Id.* at 155, 864 N.W.2d at 672.

Appellate courts have generally reached ineffective assistance of counsel claims on direct appeal only in those instances where it was clear from the record that such claims were without merit or in the rare case where trial counsel's error was so egregious and resulted in such a high level of prejudice that no tactic or strategy could overcome the effect of the error, which effect was a fundamentally unfair trial. *State v. Casares, supra*. An ineffective assistance of counsel claim made on direct appeal can be found to be without merit if the record establishes that trial counsel's performance was not deficient or that the appellant could not establish prejudice. *Id.* See, also, *State v. Filholm*, 287 Neb. 763, 848 N.W.2d 571 (2014). Here we find that the record is sufficient to determine whether trial counsel provided effective assistance and whether Bedolla was prejudiced by counsel's alleged deficient performance.

### 1. C.Z.'s Testimony

### (a) Section 27-414 Evidence

Bedolla argues that his trial counsel was ineffective by failing to object and preserve the issue of whether C.Z.'s testimony was admissible under Neb. Rev. Stat. § 27-414 (Reissue 2016). Section 27-414 provides in relevant part:

> (1) In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.
> . . . .
> (3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the

presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

Bedolla argues that his trial counsel was ineffective during the § 27-414 hearing in that his counsel waived the Nebraska Rules of Evidence to the extent that deposition testimony of the pertinent witnesses was substituted for live testimony. Bedolla argues that trial counsel's failure to object to the presentation of C.Z.'s testimony at the time of trial was also ineffective.

Two separate § 27-414 hearings were conducted before trial. The parties stipulated to the use of deposition testimony in place of live testimony in those hearings. The State was present during the depositions and had the opportunity to examine the witnesses and lodge objections. The district court determined in a written order that although it had previously refused to consolidate the alleged crimes against C.Z., that after weighing the factors under Neb. Rev. Stat. § 27-403 (Reissue 2016), C.Z.'s testimony would be admissible at trial.

Under the two-prong test outlined in *Strickland*, we find that Bedolla has failed to demonstrate prejudice. The depositions were received as evidence in the § 27-414 hearings. Bedolla points to no law, and we can find no law, that holds that stipulating to the use of deposition testimony in place of live testimony at a § 27-414 hearing is per se ineffective. The district court determined that the testimony would be admissible at trial and C.Z. testified at trial as did her sisters.

There is no indication in the record that trial counsel sought to preserve the § 27-414 issue by objecting to those portions of C.Z.'s testimony about sexual assaults inflicted on her by Bedolla. However, even if the objection was fully preserved, the record clearly supports the district court's finding that C.Z.'s testimony was properly admitted under § 27-414. Both the deposition testimony as well as the trial testimony supports the district court's finding that the probative value of the proffered testimony outweighed the risk of unfair prejudice. The statutory factors of probability that the offense occurred, proximity in time between the charged offenses and the acts described in the proffered testimony, and the similarity of the other acts to the charged offenses all favored admission of C.Z.'s testimony. Therefore, Bedolla cannot demonstrate any prejudice by way of trial counsel's failure to require live testimony at the § 27-414 hearing or by failing to object to the testimony at the time of trial.

(b) Foundational and Hearsay Evidence

Bedolla argues that his trial counsel was ineffective in allowing C.Z. to testify without objection to the following: (1) Bedolla's alleged assault at the graduation party was intentional; (2) Bedolla knew what he was doing when he touched C.Z.'s breasts; (3) J.Z. told her not to mention Bedolla sexually assaulting them; (4) J.Z. said, "I'm not doing this right now," on the front porch; (5) Aunt Lupe was "all over the place"; and (6) her childhood was ruined as a result of Bedolla.

In his brief Bedolla argues that statements (1), (2), and (5) were not within C.Z.'s personal knowledge as she cannot know the intent or mindset of another person. However, these statements fall within her personal knowledge as she was testifying to how the events transpired from her point of view. Her testimony that Bedolla intentionally grabbed her breasts while passing her was based on his actions as she perceived them. The fact she testified that she pushed him away and he continued to attempt to touch her explains how she perceived his actions as intentional. As for Aunt Lupe being "all over the place," this testimony relates to her perception of how her aunt was acting and was well within her personal knowledge. Therefore, Bedolla cannot demonstrate any prejudice from the admission of these statements.

Bedolla argues that statements (3) and (4) were hearsay and that it was ineffective for his trial counsel to not object to these statements. This argument is without merit for multiple reasons. First, J.Z. telling C.Z. to not mention the sexual abuse was not offered for the truth of the matter asserted, but rather to explain why C.Z. did not disclose the sexual abuse previous to May 25, 2015. Therefore, it was offered for a nonhearsay purpose and Bedolla cannot demonstrate any prejudice. Similarly, J.Z.'s statement that she did not want to speak with Officer Crouch was not offered for the truth of the matter asserted, but rather, to demonstrate the nature of her reaction to a question about sexual abuse from an officer. Second, even if C.Z.'s testimony was considered hearsay, J.Z. also testified both about the incident where C.Z. informed her about Bedolla's sexual abuse and her direction to not mention it, as well as her statement to Officer Crouch that she did not want to speak with him before returning inside the residence. Therefore these statements are cumulative in nature. The admission of hearsay that is merely cumulative and could not have prejudiced the defendant by materially influencing the jury is harmless error. *State v. Neujahr*, 248 Neb. 965, 540 N.W.2d 566 (1995). Therefore, Bedolla cannot demonstrate any prejudice from the admission of the statements.

Lastly, Bedolla argues that his trial counsel should have objected to C.Z.'s statement that Bedolla ruined her childhood. He argues that this statement was substantially more prejudicial than probative. We disagree. C.Z. did not testify directly at trial that her childhood had been ruined by Bedolla. She did testify that she made that statement to F.G. by way of a messaging application over 1 year prior to disclosing the alleged sexual abuse perpetrated on her by Bedolla. The testimony was adduced as part of the State's effort to rebut the defense allegation made throughout trial that C.Z.'s disclosures were recent fabrications. The statement was therefore admissible and Bedolla cannot demonstrate any prejudice from its admission.

## 2. OFFICER CROUCH'S TESTIMONY

### (a) Interpretation of Bedolla's Statement

Bedolla argues that his trial counsel erred in failing to object to both Officer Crouch and Investigator Mann testifying to the accuracy of the interpretation of Bedolla's interview. Bedolla also argues that the interpreter's statements were hearsay and should have been objected to by counsel. Finally he argues that it was ineffective for counsel to allow Officer Crouch to testify that Officer Champion never mentioned any problems translating Bedolla's statements.

Bedolla argues that the verification of Champion's translation is not within the personal knowledge of Officer Crouch or Investigator Mann. He argues that trial counsel was ineffective by failing to object on hearsay and Confrontation Clause grounds because counsel never had the

opportunity to question Officer Champion, and that the officers that testified were offering Champion's statements. Finally, Bedolla argues that Officer Crouch's testimony that Officer Champion did not indicate any problems with the interpretation was also hearsay as nonverbal communication falls within the hearsay rule.

Bedolla's argument fails for multiple reasons. First, even if we were to consider Champion's interpretation of Bedolla's statements as hearsay, their admission is harmless. The interview only dealt with allegations from C.Z., who was not a victim in this case. Bedolla flatly denied all accusations of sexual assault in the interview. The only statement that Bedolla may be concerned with is when asked whether he had ever touched or penetrated their vaginas, he responded, "[n]ot that [I] can remember." Although oddly phrased, this was still a denial of any criminal conduct. Second, Bedolla cited no Nebraska case law, and we can find none that holds that where a police officer is translating the statements of a criminal suspect to another police officer, the interpreting officer's statements constitute hearsay or stand in violation of the Confrontation Clause. We note that the State refers to *U.S. v. Orm Hieng*, 679 F.3d 1131 (9th Cir. 2012), for discussion of a "language conduit" approach that has been used in the federal courts to address the issue of police testifying to what other police officers interpret to them from individuals being interviewed. Bedolla says this court should consider *Taylor v. State*, 226 Md. App. 317, 130 A.3d 509 (2016), but fails to discuss how that Maryland case supports his position here. We find it unnecessary to address cases from other jurisdictions. Even if we found these cases to be relevant to whether trial counsel was effective Bedolla still would not be able to demonstrate actual prejudice given that no incriminating statements were made during the interview. Finally, Bedolla argues that it was error for trial counsel to allow the officers to testify to the accuracy of the translation without objection. However, he does not allege on appeal that any portion of the translated statements were in fact inaccurate. Without any citation to an inaccurate translation, or even any general allegation of inaccuracy, Bedolla cannot demonstrate any actual prejudice. Therefore, we find that Bedolla's ineffective assistance of counsel claims regarding the testimony surrounding the interpretation of his interview are without merit.

### (b) Night of C.Z.'s Report

Bedolla argues that his trial counsel was ineffective in allowing Officer Crouch to testify without objection to the following: (1) that C.Z.'s parents were in shock when told that Bedolla had sexually abused C.Z.; and (2) J.Z. said, "I'm not doing this right now," on the front porch.

Bedolla argues that whether Carlos and Estela were in shock when informed of C.Z.'s allegations was not within Officer Crouch's personal knowledge as he cannot know the intent or mindset of another person. However, this statement falls within his personal knowledge as he was testifying to his perspective of their demeanor as the events transpired. Therefore, Bedolla cannot demonstrate any prejudice from the admission of the statement.

With respect to Officer Crouch testifying about J.Z.'s statement on the porch the night of May 25, 2015, we addressed that issue in our discussion of C.Z.'s testimony. The testimony is not hearsay and is cumulative to J.Z.'s own testimony. Again, Bedolla cannot demonstrate prejudice as a result of his trial counsel failing to lodge an objection.

### 3. F.G.'s Testimony

Bedolla argues that his trial counsel was ineffective by not objecting to the relevance of the entire testimony of F.G. Bedolla argues that C.Z.'s testimony was collateral evidence permitted by the district court under § 27-414 and that his trial counsel should have objected to the relevance of the testimony of F.G. utilized as a prior consistent statement of C.Z.

C.Z. testified prior to F.G. In her testimony, she specifically mentioned sending Facebook messages to F.G. disclosing that she had been subjected to sexual contact by Bedolla. Through the use of screenshots of the messages, her memory was refreshed that the conversation with F.G. occurred on January 24, 2014. F.G. was called for the purpose of corroborating C.Z.'s testimony. It is noteworthy that in his testimony, the only time F.G. mentions the specific subject matter of the messages from C.Z., trial counsel objected and the district court sustained the objection. However, F.G. did testify without objection that C.Z. had conversations with him on Facebook Messenger wherein she described information which she considered to be private and secret. He recognized and identified the same screenshots of a conversation occurring between himself and C.Z. on January 21, 2014, as was previously identified by C.Z. as her disclosure of the acts perpetrated on her by Bedolla. He then testified that in response to C.Z.'s disclosures, he advised her she should talk to an adult about what had happened.

The purpose of F.G.'s testimony was to bolster C.Z.'s credibility by providing further evidence that her initial allegations regarding Bedolla were not recent fabrications. In his opening statement, trial counsel stated that the evidence would show that C.Z. made no allegations about Bedolla inappropriately touching her until a series of events occurred in which she was ultimately punished by her parents for allowing a friend to drive their car. He stated that the evidence would show that it was Bedolla who saw the friend driving the car and made the initial report which eventually made its way to C.Z.'s parents. During the presentation of Bedolla's case, evidence supporting these assertions was presented. Other evidence regarding C.Z.'s reputation for truthfulness was also presented.

C.Z.'s credibility was a major issue in this case since she was the first of the four sisters to report allegations of inappropriate sexual touching by Bedolla. Even though the offenses charged in this case were related to the three sisters of C.Z., we see no legal basis, and Bedolla does not cite to us one, for his allegation that evidence of a prior consistent statement cannot be used in response to his contention that C.Z. had recently fabricated her allegations against him.

A statement is nonhearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. Neb. Rev. Stat. § 27-801(4)(a)(2) (Reissue 2016). It is clear from the record that Bedolla's trial counsel was either explicitly or implicitly attempting to demonstrate that C.Z. had recently fabricated her report of sexual abuse. As a result, the State offered the testimony of F.G. to corroborate C.Z.'s testimony that she had previously disclosed Bedolla's actions to him on January 24, 2014. Neither § 27-414 nor § 27-801(4)(a)(2) prohibit the use of such a prior consistent statement as evidence. Therefore, Bedolla cannot demonstrate prejudice as this evidence was clearly admissible at trial.

### 4. T.Z.'s Testimony

#### (a) Van Incident

Bedolla argues that his trial counsel was ineffective because he allowed T.Z. to testify about the alleged van masturbation incident. Bedolla argues that this was evidence under § 27-414 and that the pretrial order issued by the district court allowed for this evidence only at the families' residences. As a result, he argues that his trial counsel should have objected to the testimony as improper under § 27-414.

The alleged incident is described above. We find that this evidence does not constitute other crimes evidence under Neb. Rev. Stat. § 27-404 or § 27-414, but is intrinsic evidence to the charged crimes. It is clear that the alleged act was for purposes of sexual gratification. This evidence was clearly admissible as intrinsic evidence within the factual setting of the charged crimes and not precluded under Neb. Rev. Stat. § 404(2). In *State v. McPherson*, 266 Neb. 734, 668 N.W.2d 513 (2003), a sexual assault case, the Nebraska Supreme Court held that evidence of sexual devices and sexually explicit videos were not evidence of prior unrelated bad acts under rule 404(2), but were relevant evidence that formed the factual setting of the crimes charged. Here, T.Z. was one of the victims alleged in the charged offenses and the alleged incident occurred during the charged time period. Third degree sexual assault requires that the contact occur "for the purpose of sexual arousal or gratification of either party." This alleged incident clearly conforms to the behavior outlined in the statute. This evidence is intrinsic to the charged crimes and is not precluded under § 27-404 or § 27-414. Therefore, trial counsel's failure to object to T.Z.'s testimony was not prejudicial to Bedolla since it was clearly admissible.

#### (b) Foundational and Hearsay Evidence

Bedolla argues that his trial counsel was ineffective in allowing T.Z. to testify without objection to the following: (1) when her mother returned from being outside with the officer that she was crying and (2) when her mother spoke to Aunt Lupe over the phone after C.Z. reported Bedolla's sexual assaults, her mother accused Bedolla of touching her child.

In his brief Bedolla argues that T.Z. should not have been permitted to testify about her mother's reaction after speaking with Officer Crouch. He argues that her mother's reaction was not within T.Z.'s personal knowledge as she cannot know the intent or mindset of another person. However, as found above, these statements fall within her personal knowledge as she was testifying to her perception of her mother's demeanor and actions. Her testimony that her mother was crying was based on her actions as she perceived them. As this evidence was clearly admissible, Bedolla cannot demonstrate that his trial counsel was so ineffective to demonstrate prejudice. As for Estela's statement to Lupe where she accused Bedolla of touching her child, this was an exception to the hearsay rule as it was an excited utterance. An excited utterance is defined as a statement made during a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition. Neb. Rev. Stat. § 27-803(1) (Reissue 2016). T.Z. testified that after hearing C.Z.'s disclosure, her mother was "hysterical," "bawling," and "couldn't control herself." T.Z. testified that her mother was still crying approximately 5 minutes later when she made a telephone call to her sister. Even if the statement was not an excited utterance it was still admissible. It was not offered for the truth of the matter asserted, but, rather,

to demonstrate the effect of how she reacted to Lupe's husband allegedly abusing her children. Moreover, any error in the admission of this evidence would be harmless as there is no probability that the outcome of the proceeding would have been different if the testimony would have been precluded. Therefore, Bedolla cannot demonstrate any prejudice from the admission of the statements.

## 5. REMAINING TESTIMONY

### (a) Estela's Testimony

Bedolla argues that his trial counsel was ineffective in (1) failing to object to Estela's testimony regarding Lupe's demeanor on May 25, 2015, and (2) failing to object to Estela's testimony regarding Lupe's demeanor on her second visit to Estela's home.

Bedolla argues that Estela's testimony was not within her personal knowledge as she cannot know the intent or mindset of another person. Estela testified to Lupe's reactions after C.Z. first reported. Estela testified that the night of May 25, 2015, Lupe came over to her home and that she was not upset, which was not what Estela expected. Estela testified the next time Lupe came over to her home, she was sad and crying, and not making much sense. However, as fully discussed above, this statement falls within her personal knowledge as she was testifying to her observations of Lupe's demeanor. Therefore, Bedolla cannot demonstrate any prejudice from the admission of this testimony.

### (b) Carlos' Testimony

Bedolla argues that his trial counsel was ineffective in (1) failing to object to Carlos' testimony that he knew before T.Z. reported that Bedolla had been abusing her that she was afraid to come forward and (2) not allowing Carlos to testify about C.Z.'s history of lying at home.

Carlos testified that after C.Z. first reported the sexual abuse, but before T.Z. reported her history of abuse, he knew that she was afraid to come forward. Even if this testimony was erroneously admitted, the error was harmless. The jury was already aware that T.Z. was the last victim to report her history of abuse. This testimony was also cumulative as T.Z. had already testified that she did not want to disclose the abuse right away because it was something she wanted to forget and she did not want to ruin the bond between her mother and aunt. Any error in the admission of this evidence would be harmless and there is no probability that the outcome of the proceeding would have been different if the testimony would have been precluded.

Bedolla's argument that his counsel was ineffective because he did not allow Carlos to testify about C.Z.'s prior history of lying at home is also without merit. Trial counsel did attempt to adduce this very evidence. However, the State lodged an objection to trial counsel's question about C.Z.'s history of lying and the district court sustained the objection. Therefore, this is not a basis for a claim of ineffective assistance of counsel as trial counsel attempted to adduce the very evidence Bedolla now alleges he failed to present.

### (c) Lupe's Testimony

Bedolla argues that his trial counsel was ineffective in failing to object during the State's cross-examination of Lupe Bedolla. Bedolla also argues that counsel allowed improper impeachment of another defense witness to take place during the questioning of Lupe.

During the testimony of Bedolla's son, trial counsel elicited testimony that the two families had planned a trip to California and that the three eldest girls would be traveling with his family by van. He testified that if there was no other choice, the girls would fly to California. Lupe Bedolla was asked about whether her son would have been lying or mistaken if he had testified that the victims were going to drive to California to visit her other son. Bedolla argues that this constituted improper impeachment of Bedolla's son.

Bedolla cannot demonstrate any prejudice in failing to object to this line of questioning as it would have been unsuccessful. The State is allowed to cross-examine defense witnesses about inconsistent details regarding common topics of testimony. Therefore, it was not improper impeachment and no prejudice can be shown.

### 6. OPINION TESTIMONY

Bedolla argues in his brief that his trial counsel was ineffective by failing to object to both Investigator Mann and the forensic interviewer's opinion as to whether children report sexual assaults immediately. However, he did not specifically assign this error in his assignment of errors section. An alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error to be considered by an appellate court. *State v. Chacon*, 296 Neb. 203, 894 N.W.2d 238 (2017). Therefore, we will not consider this alleged error.

### VI. CONCLUSION

We find that the record is sufficient to address all of Bedolla's claims of ineffective assistance of counsel on the merits. We conclude, for the reasons given herein, that all of his claims are without merit.

AFFIRMED.